UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RHEALINDA D. MARCELIN                              CIVIL ACTION

VERSUS                                             NUMBER: 16-14075

NANCY A. BERRYHILL, ACTING                         SECTION: "E"(5)
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION

# REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration ("SSA") terminating Plaintiff's Social Security benefits. (Rec. docs. 15, 17).[1]

Rhealinda D. Marcelin, Plaintiff herein, filed applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") benefits on June 9, 2006, alleging disability as of August 27, 2005. (Tr. pp. 145-147, 140-142).[2] In a "Disability Report-Adult" form that is present in the administrative record below, the condition limiting Plaintiff's ability to work was identified as major depressive disorder. (Tr. pp. 160-168). Based upon a review of an undated "Explanation of Determination" form,[3] it appears that Plaintiff was found to be disabled by the State Department of Disability Services as of

---

[1] In addition to filing her cross-motion for summary judgment, Plaintiff has also filed a memorandum in opposition to Defendant's motion for summary judgment. (Rec. doc. 23).
[2] The record reveals that Plaintiff had filed previous applications for Social Security benefits that were denied at the initial level of the Commissioner's administrative review process in late 1995 and were not appealed further. (Tr. pp. 156-157).
[3] Although this Explanation of Determination form is undated, the index of the exhibits filed in the administrative record represents that the form is dated August 14, 2006. (Rec. doc. 10-1, p. 1).

November 30, 20005 on the basis of a medical examination that had been conducted on May 31, 2006. (Tr. p. 50).

In early 2013, Plaintiff was notified that her case was being reviewed to determine her continued eligibility to receive Social Security benefits. In a "Continuing Disability Review Report" form that was completed by Plaintiff on April 16, 2013, the conditions that continued to limit her ability to work were identified as manic depression/sleep disorder, a bad back, knee problems, and asthma. (Tr. pp. 186-197). In that form, Plaintiff described her activities on a typical day as rising and readying her daughter for school, cooking, cleaning, washing, driving, and paying bills. (*Id.*). Interests included going to church and spending time with her grandchildren. (*Id.*). She further indicated on the form that her conditions caused her difficulty in walking, standing, lifting, sitting, reading, remembering, understanding/following directions, completing tasks, and getting along with others. (*Id.*).

On May 31, 2013, a Disability Examiner/Claims Representative and a physician/medical specialist from the State reviewed Plaintiff's file and determined that she was no longer disabled as of June 1, 2013. (Tr. pp. 51-53). Formal notices advising Plaintiff that her benefits would be terminated were issued on June 3, 2013. (Tr. pp. 56-58, 59-61). Plaintiff then requested reconsideration of that determination on June 13, 2013. (Tr. p. 62). In a "Disability Report-Appeal" form, Plaintiff indicated that she was then suffering from bulging discs at the top and bottom of her spine, hypertension, knee problems, and pancreatitis. (Tr. pp. 218-224). As a result of these conditions, she sometimes required help from her daughter with her personal needs, had difficulty cooking due to manipulation deficits, was unable to stand for long periods of time, and needed assistance with household chores. (*Id.*).

2

As part of the reconsideration process, a hearing before a Disability Hearing Officer ("DHO") was scheduled for December 16, 2013. (Tr. pp. 63-65). That hearing went forward as scheduled with Plaintiff in attendance. (Tr. pp. 67-79). On April 3, 2014, the DHO issued a written decision in which he affirmed that Plaintiff's disability had ended effective June 1, 2013, with formal notice to that effect being mailed to Plaintiff the following day. (Tr. pp. 80-90, 92-93, 94-95). Pursuant to Plaintiff's request, a hearing *de novo* before an Administrative Law Judge ("ALJ") went forward on January 20, 2015 at which Plaintiff, who was represented by counsel, and a Vocational Expert ("VE") appeared and testified. (Tr. pp. 100-101, 27-49). On March 5, 2015, the ALJ issued a written decision in which he, too, concluded that Plaintiff's disability ended as of June 1, 2013 and that medical improvement had occurred that was related to her ability to work. (Tr. pp. 8-26). The Appeals Council ("AC") subsequently denied Plaintiff's request for review of the ALJ's decision on June 24, 2016, thus making the ALJ's decision the final decision of the Commissioner. (Tr. pp. 1-4). It is from that unfavorable decision that the Plaintiff seeks judicial review pursuant to 42 U.S.C. §405(g).

In her cross-motion for summary judgment, Plaintiff frames the issues for judicial review as follows:

    A.  The termination of disability should be reversed because the [A]gency failed to properly explore whether the claimant's limitations that put her onto disability continue.

        1. History of the medical improvement standard in the courts.

        2. Current standard as enacted in the Social Security Act and [R]egulations.

        3. The ALJ incorrectly found [that] Ms. Marcelin demonstrated medical improvement as it related to her ability to work because he

3

failed to consider the residual functional capacity that initially caused her to be disabled at the Comparison Point Decision. [4]

(Rec. doc. 15-1, pp. 14, 15, 18, 19).

B. There is not substantial evidence in the record for having determined no mental RFC limitations.

Relevant to the issues to be decided by the Court are the following findings that were made by the ALJ:

1. The most recent favorable medical decision finding that the claimant was disabled is the determination dated August 10, 2006, wherein the claimant was continued in her disability status secondary to depression. This is known as the "comparison point decision" or CPD.

2. At the time of the CPD, the claimant had the following medically determinable impairment: depressive disorder. This impairment was found to preclude the performance of substantial gainful activity per CPD decision of August 10, 2006. Exhibit 7B/3.

3. As of June 1, 2013, the date the claimant's disability ended, the claimant had not engaged in substantial gainful activity. (20 CFR 404.1594(f)(1)).

4. The medical evidence establishes that, as of June 1, 2013, the claimant had the following medically determinable impairments: depressive disorder, degenerative disc disease (DDD) of the spine and degenerative joint disease (DJD) of the knees with osteoarthritis (OA), history of obstructive sleep apnea (OSA) corrected with nighttime use of a C-PAP machine, history of stable pulmonary nodules/asthma/allergic rhinitis (AR), clinically-controlled hypertension (HTN) classified as benign and resolution of pancreatitis attacks with biliary sphincterotomy and medication management. These are the claimant's current impairments. SSR 96-3p.

5. Since June 1, 2013, the claimant has not had an impairment or combination of impairments which meets or medically equals the severity of impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

---

[4] Unlike what Plaintiff labels as A(1) and A(2) in her cross-motion for summary judgment, A(3) is more of a stand-alone challenge to the Commissioner's decision than a discussion of the history and current standard of the law governing the termination of Social Security benefits.

4

6. Medical improvement occurred as of June 1, 2013 (20 CFR 404.1594(b)(1) and 416.994(b)(1)(i)).

7. As of June 1, 2013, the impairment present at the time of the CPD had decreased in medical severity to the point where the claimant had the residual functional capacity to perform light work activity which allowed for unlimited sitting, standing and walking for no more than 6-hours in an 8-hour work day with the ability to frequently bend and stoop, with avoidance against exposure to fumes, odors, dusts, gases and poor ventilation with no mental restrictions.

8. The claimant's medical improvement is related to the ability to work because it has resulted in an increase in the claimant's residual functional capacity (20 CFR 404.1594(c)(3)(ii) and 416.994(b)(2)(iv)(B)).

9. Beginning on June 1, 2013, the claimant has continued to have a severe impairment or combination of impairments (20 CFR 404.1594(f)(6) and 416.994(b)(5)(v)).

10. Beginning on June 1, 2013, based on the current impairments, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), which allowed for standing and walking up to 6-hours in an 8-hour work day, unlimited sitting in an 8-hour work day, occasional bending and stooping with avoidance of work environments exposing her to fumes, odors and gases.

11. Beginning on June 1, 2013, the claimant has been unable to perform past relevant work (20 CFR 404.1565 and 416.965).

12. On June 1, 2013, the claimant was a younger individual age 18-49 (20 CFR 404.1563 and 416.963).

13. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

14. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

15. Beginning on June 1, 2013, considering the claimant's age, education, work experience, and residual functional capacity based on the current impairments, the claimant has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

16. The claimant's disability ended on June 1, 2013, and the claimant has not become disabled again since that date (20 CFR 404.1594(f)(8) and 416.994(b)(5)(vii)).

(Tr. pp. 13, 14, 15, 18, 19).

Judicial review of the Commissioner's decision to terminate Social Security benefits is limited under 42 U.S.C. §405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision, and (2) whether the decision comports with relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420 (1971). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). The Court may not reweigh the evidence or try the issues *de novo*, nor may it substitute its judgment for that of the Commissioner. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983).

In termination cases like this one, the Commissioner may discontinue Social Security benefits if substantial evidence demonstrates that: (1) there has been medical improvement related to an individual's ability to work and (2) the individual is now able to engage in substantial gainful activity. 42 U.S.C. §423(f); 20 C.F.R. §§404.1594(a), 416.994(b). Medical

6

improvement is defined as any decrease in the medical severity of a claimant's impairment that was present at the time of the most recent favorable medical decision that the claimant was or continued to be disabled. 20 §§404.1594(b)(1) 416.994(b)(1)(i). The second part of the evaluation process relates to the ability to engage in substantial gainful activity. In making this determination, the Commissioner uses the eight-step sequential analysis set forth in 20 C.F.R. §404.1594(f) for DIB claims and the seven-step sequential analysis set forth in 20 C.F.R. §416.994(b)(5) for SSI claims, as follows:

1. Is the claimant engaged in substantial gainful activity? (If so, the disability has ended)(applicable to DIB claims only).

2. If not, does the claimant have an impairment or combination of impairments that meets or equals the severity of an impairment listed in Appendix 1? (If so, the disability is continuing).

3. If not, has there been medical improvement?

4. If there has been medical improvement, is it related to the claimant's ability do work?

5. If there has been no medical improvement, or if the medical improvement is not related to the claimant's ability to do work, is one of the exceptions to medical improvement applicable? (If not, the disability is continuing).

6. If there has been no medical improvement, or if the medical improvement is not related to the claimant's ability to do work, or if one of the first group of exceptions is applicable, is the combination of impairments severe? (If not, the disability has ended).

7. If so, is the claimant able to engage in past relevant work? (If so, the disability has ended).

8. If not, is the claimant able to perform other substantial gainful activity?

> *See also Griego v. Sullivan*, 940 F.2d 942, 944 n. 1 (5th Cir. 1991).

"Under the medical improvement standard, the government must, in all relevant respects, prove that the person is no longer disabled." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)(citing 42 U.S.C. §423(f) and *Griego*, 940 F.2d at 943-44).

As noted above, Plaintiff challenges the Commissioner's decision to terminate her Social Security benefits on two grounds. Under the rubric of her first challenge, Plaintiff argues that the ALJ's finding – that she had experienced medical improvement that was related to her ability to work – is legally flawed because the ALJ failed to consider the residual functional capacity ("RFC") to work that she possessed when she was initially found to be disabled, the so-called "comparison point decision" ("CPD"). Finding that challenge to have merit, the Court will recommend, for the reasons that follow, that Plaintiff's case be remanded to the Commissioner for further consideration.

As touched upon earlier, the first inquiry that must be made in a termination case like this one is whether there has been medical improvement related to an individual's ability to work which "… must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the individual's] impairment(s) … 20 C.F.R. §§404.1594(b)(1), 416.994(b)(1)(i). These Regulations impose an obligation upon an ALJ to compare the prior medical evidence upon which the finding of disability was based with the claimant's current medical evidence. *Newmiller v. Colvin*, No. 15-CV-0139, 2016 WL 3034670 at *4 (C.D. Cal. May 27, 2016)(quoting *Medina v. Colvin*, No. 04-CV-1967, 2015 WL 5448498 at *11 (N.D. Cal. Aug. 21, 2015)). Medical improvement is deemed to be not related to an individual's ability to work "… if there has been a decrease in the severity of the impairment(s) … present at the time of the most recent favorable medical decision, but <u>no</u>

increase in [the individual's] functional capacity to do basic work activities ..." 20 C.F.R. §§404.1594(b)(2), 416.994(b)(1)(ii)(emphasis in original).

The Regulations further provide that "... the SSA must compare 'the current medical severity of th[e] impairment[] ... to the medical severity of that impairment[] at th[e] time' of the most recent favorable medical decision." *Veino v. Barnhart*, 312 F.3d 578, 586-87 (2nd Cir. 2002)(quoting 20 C.F.R. §404.1594(b)(7)). "Medical improvement ... is determined by a comparison of [the] prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with the impairment(s)." 20 C.F.R. §§404.1594(c)(1), 416.994(b)(2)(i). This affirmative duty to compare prior medical evidence with current medical findings is specific to the ALJ. *Newmiller*, 2016 WL 3034670 at *4. In making the medical-improvement determination, the Regulations provide a number of factors and considerations that apply depending on whether the prior favorable decision was made at step three of the traditional 20 C.F.R. §§404.1520/416.920 analysis or, if it proceeded past that step, by comparing prior and current residual functional assessments if one was previously made; if one should have been previously made but was not; if the impairment was subject to temporary remission; or even if the file of the prior favorable decision cannot be located. 20 C.F.R. §§404.1594(c)(3)(i) to (v), 416.994(b)(2)(iv)(A) to (E).

In the first finding of fact that he made in this case, the ALJ identified August 10, 2006 as the date of the CPD on which Plaintiff was deemed to be disabled secondary to depression. (Tr. p. 13). In finding of fact number two, the ALJ found that Plaintiff suffered from the medically determinable impairment of depressive disorder that "... preclude[d] the performance of substantial gainful activity per [the] CPD decision of August 10, 2006. Exhibit

9

7B/3." (*Id.*). Unfortunately, the exhibit cited by the ALJ, No. 7B/3, is not the CPD at all but is instead the third page of the DHO's decision of April 13, 2014. (Tr. pp. 80-90). The problem is that the decisions of a DHO are not considered to be evidence, *Veino*, 312 F.3d at 587, and an ALJ is not allowed to rely solely on a DHO's summary of the medical evidence that was extant at the time of a prior finding of disability in making his medical-improvement determination. *Newmiller*, 2016 WL 3034670 at *4; *Tucker v. Colvin*, No. 13-CV-2185, 2015 WL 1240001 at *4 (E.D. Cal. Mar. 16, 2015)(an ALJ must compare current medical evidence to the medical record from the time of the CPD). One court has even held that an ALJ's short summary of the previous medical records was not enough to allow it to compare plaintiff's impairments and determine if medical improvement had occurred. *Chambers v. Astrue*, No. 11-CV-6198, 2012 WL 2836224 at * 3 (D. Or. Jul. 10, 2012).

In finding of fact number six, the ALJ determined that medical improvement to Plaintiff's condition had occurred as of June 1, 2013. (Tr. p. 13). In support of that finding, the ALJ noted that Plaintiff had not experienced any depression-related incidents that required inpatient or emergency room treatment. (Tr. p. 14). Rather, the ALJ observed, the recent medical records revealed only two psychiatric follow-up visits with Dr. Anwar on August 27, 2013 and February 25, 2014, the brevity of which were deemed to be worthy of mention. (*Id.*). Purporting to quote from the treatment notes of the former visit, the ALJ actually referenced the records of a third outpatient session Plaintiff had attended on June 18, 2013, which was apparently overlooked. (Tr. pp. 659-660). While the lack of ongoing treatment is of significance in a typical Social Security case, *Fraga*, 810 F.2d at 1303, at least one court has viewed the relative dearth of information regarding a claimant's mental health treatment as "… dispositive, since the burden is on the administration to show substantial

evidence supporting its decision of medical improvement." *Morgan v. Comm'r of Soc. Sec.*, No. 09-CV-0271, 2010 WL 5400817 *6 (S.D. Ohio Mar. 30, 2010), *adopted*, 2010 WL 5419060 (S.D. Ohio Dec. 22, 2010). Suffice it to say here that on each of the three occasions that Plaintiff was seen by Dr. Anwar, she was assessed a GAF score of 45 (tr. pp. 660, 658, 758) which is reflective of "serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)." *Boyd v. Apfel*, 239 F.3d 698, 702 (5th Cir. 2001)(citation and quotation omitted).

Admittedly, the administrative record in this case contains a series of forms that appear to have been generated in 2006 in connection with Plaintiff's initial applications for Social Security benefits. (Tr. pp. 50, 346-359, 360-363, 364-365). It also contains records of medical treatment that Plaintiff received in 2006 (tr. pp. 262-270, 271-310, 311-322, 323-328, 329-345), records that were briefly summarized by the DHO in his written decision of April 3, 2014. (Tr. p. 82). An ALJ, however, is not entitled to rely solely on a DHO's summary of the medical evidence that existed at the time of disability for purposes of medical improvement in discharging the affirmative burden that is imposed on him in §§404.1594(c)(1) and 416.994(b)(2)(i). Nowhere in his written decision did the ALJ cite or discuss any of the medical evidence that supported the initial finding that Plaintiff was disabled in 2006, *Hathaway v. Berryhill*, ___ Fed.Appx. ___, ___, 2017 WL 1380549 at *2 (2nd Cir. 2017), and the closest that he came to making a considered comparison of Plaintiff's functionality was the single statement that, "[b]ased on the impairment present as of the CPD, the residual functional capacity the claimant has had since June 1, 2013 is less restrictive than the one the claimant had at the time of the CPD." (Tr. p. 14). It is up to the

11

ALJ in the first instance to compare the prior and current medical evidence in discharging his affirmative obligation under §§404.1594(c)(1) and 416.994(b)(2)(i). *Hathaway*, Fed.Appx. __ at __, 2017 WL 1380549 at * 2-3; *Newmiller*, 2016 WL 3034670 at *4-5.

### **RECOMMENDATION**

For the foregoing reasons, it is recommended that Plaintiff's motion for summary judgment be granted, that Defendant's motion for summary judgment be denied, and that Plaintiff's case be remanded to the Commissioner for further proceedings consistent with the Court's opinion.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).[5]

New Orleans, Louisiana, this 15th day of August, 2017.

MICHAEL B. NORTH  
UNITED STATES MAGISTRATE JUDGE

---

[5] *Douglass* referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.